UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 95-50191
Summary Calendar
_____

RUDY MARTINEZ,

Plaintiff-Appellant,

VERSUS

SHIRLEY S. CHATER,
Commissioner of Social Security,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Western District of Texas
(CA-A-93-739)
_____

October 26, 1995

Before DAVIS, BARKSDALE, and DeMOSS, Circuit Judges.

PER CURIAM:[1]

Rudy Martinez appeals the district court's affirmance of denial of disability benefits and Supplemental Security Income (SSI) by the Commissioner of Social Security. We **AFFIRM**.

I.

Martinez applied for disability benefits and SSI in September 1991, alleging that he had been disabled since June 20, 1991, because of problems with his esophagus and stomach, nervousness,

_____

[1] Local Rule 47.5 provides: "The publication of opinions that have no precedential value and merely decide particular cases on the basis of well-settled principles of law imposes needless expense on the public and burdens on the legal profession." Pursuant to that Rule, the court has determined that this opinion should not be published.

shortness of breath and impaired vision and hearing.  He was denied benefits initially and on reconsideration.  A hearing was held before an administrative law judge (ALJ) on September 28, 1992. Following the hearing, Martinez was referred for a consultative psychological examination, and on February 25, 1993, Martinez, a medical expert, and a vocational expert testified at a supplemental hearing.  Martinez was represented by a paralegal at both hearings.

The ALJ determined that Martinez was not disabled within the meaning of the Social Security Act because, although he could not perform his past relevant work, he could perform other jobs available in the national economy.  The Appeals Council denied Martinez's request for review, and the decision of the ALJ became the final decision of the Commissioner[2] under 42 U.S.C. § 405(g).

Martinez sought judicial review of the Commissioner's decision.  The magistrate judge recommended that the district court affirm the Commissioner's determination that Martinez was not disabled.  After a *de novo* review, the district court adopted that recommendation, overruled Martinez's objections, and affirmed the denial of benefits.

II.

Martinez asserts that he should not have been denied benefits, maintaining that he is mentally impaired.  On review, this court

_____

[2]    Pursuant to P.L. No. 103-296, the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security effective March 31, 1995.  Accordingly, for all relevant references to the Secretary (Donna E. Shalala), we have substituted references to the Commissioner (Shirley S. Chater).

determines whether the proper legal standards were applied and whether the decision is supported by substantial evidence in the record. *E.g., **Anthony v. Sullivan***, 954 F.2d 289, 292 (5th Cir. 1992). The findings "as to any fact, if supported by substantial evidence, shall be conclusive". 42 U.S.C. § 405(g); ***Richardson v. Perales***, 402 U.S. 389, 390 (1971). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. at 401. In short, we do not re-weigh the evidence; conflicts in the evidence are for the Commissioner to resolve. ***Selders v. Sullivan***, 914 F.2d 614, 617 (5th Cir. 1990).

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months". 42 U.S.C. § 423(d)(1)(A). In evaluating a claim of disability, the Commissioner conducts a well known five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant's ability to work is significantly limited by a physical or mental impairment; (3) the impairment meets or equals an impairment listed in the appendix to the regulations; (4) the impairment prevents the claimant from doing his or her past relevant work; and (5) the impairment prevents the claimant from performing other work. 20 C.F.R. § 404.1520 (1995); ***Muse v. Sullivan***, 925 F.2d 785, 789 (5th Cir. 1991). At the first four steps of the analysis, the claimant has the initial burden of

proving disability. At the fifth step, the burden shifts, and the Commissioner is required to show that the claimant is capable of performing other work available in the national economy. ***Wren v. Sullivan***, 925 F.2d 123, 125 (5th Cir. 1991). Martinez claims that the ALJ's step five determination--that Martinez retained the functional capacity to perform a limited range of medium work--is not supported by substantial evidence.

A.

Martinez was 54 years old at the September 1992 hearing before the ALJ. He has a sixth grade education and limited reading ability in Spanish and English. His past relevant work includes driving a cab and trimming trees. He last worked on June 20, 1991.

Martinez testified that he stopped working because he "felt sick". He experiences nausea once or twice per week and has sharp pains in his left shoulder and arm. He sometimes vomits blood and occasionally has a black stool. He becomes nervous about twice a week and that is usually when he throws up. He has undergone medical tests but has not been diagnosed with a medical problem which would explain his symptoms. Martinez's medical records indicate that he has never sought psychological or psychiatric help for his symptoms.

Martinez told the ALJ that he did not believe he could drive a cab because of his stomach problems and nervousness. He drives his wife to work and his daughter to school, and spends the rest of the day at home, watching television, listening to the radio, dusting, and sweeping. The paralegal representative asked that the

- 4 -

ALJ send Martinez for a mental examination to evaluate his symptoms of nervousness.

Psychologists Martha Fantasia and William J. Dubin performed a consultative examination on November 21, 1992. Martinez told them that he had "spells where [he became] nervous and dizzy, and thr[ew] up, sometimes with light blood". He reported "almost daily" episodes of vomiting for the last two years and, three or four times a week, "attacks" in which he experiences shortness of breath, dizziness, tachycardia, trembling, sweating, nausea, numbness, chest pain, and blurry vision. Drs. Fantasia and Dubin opined that Martinez suffered from panic disorder with mild agoraphobia,[3] secondary type dysthymia (mood disorder), and borderline intellectual functioning. They estimated that Martinez had a global functioning (GAF) factor of 50.

At the second hearing, medical expert Dr. Alfred Williams testified that he had reviewed Martinez's medical and psychological reports and that the records revealed "nothing, from a medical standpoint". Concerning the psychological report, Dr. Williams stated that Martinez's intellectual capacity was "borderline," but that he was not mentally retarded. The severity of his reported restrictions on daily activities did not appear to meet or exceed any listed mental disability or result in a complete inability to function outside of his home.

---

[3] Agoraphobia is an "irrational fear of leaving the familiar setting of home, so pervasive that a large number of external life situations are entered in reluctantly or are avoided". *See* ***Stedman's Medical Dictionary*** (25th ed. 1990).

Dr. Williams disagreed with Drs. Fantasia's and Dubin's estimate of Martinez's GAF factor. Dr. Williams opined that the activities reported by Martinez indicated that a more accurate estimate would be "around 60 or something like that". Dr. Williams stated that Martinez's reported daily activities did not indicate serious depression or ongoing anxiety, and noted that the only psychosocial stressor cited by Drs. Fantasia and Dubin was unemployment, which, "kind of implies [that] if he got a job, . . . he'd be well".

Vocational expert Frederick Fox testified that Martinez's past employment as a taxi driver was semi-skilled, medium work and that his past employment as a tree trimmer was semi-skilled, heavy work. The ALJ asked whether a man of Martinez's age and work history, who had no physical restrictions, but who suffered from moderately severe dysthymia, panic disorder, agoraphobia, and borderline intelligence, could perform Martinez's past relevant work. Fox opined that such a person could not work as a cab driver, but could work as a tree trimmer. When the ALJ changed the hypothetical to indicate severe, rather than moderately severe, mental conditions, Fox opined that the person would be unable also to work as a tree trimmer.

Next, the ALJ asked Fox to assume that the individual suffered from moderate dysthymia, panic, and agoraphobia and had severe daytime nausea twice a week. Fox responded that the individual would likely be unable to work as a tree trimmer. Dr. Williams

agreed that Martinez's reported symptoms of nausea and dizziness contraindicated tree-trimming work.

The ALJ asked Fox if there were other unskilled jobs which this hypothetical individual could perform if his mental problems were moderate. Fox responded that the individual could work as an irrigator or an agricultural worker. When the ALJ changed the hypothetical to give the individual a "severe rather than medium" mental disorder, Fox opined that the individual would be unable to perform those jobs. Martinez's representative was given an opportunity to cross-examine the vocational expert.

The ALJ accepted Dr. Williams's assessment of Martinez's physical and mental impairments, including his determination that the evidence did not support the GAF factor of 50 reported by the consultative examiners. The ALJ concluded that Martinez's impairments did not rise to the level of a listed disability. The ALJ found that Martinez suffered some symptoms of nervousness, pain, dizziness, and nausea, but determined that Martinez's claims as to the extent of his symptoms were not credible. The ALJ noted that Martinez's claims of blackouts were unsupported and inconsistent; his allegations about the frequency of his vomiting attacks were inconsistent; medical tests had disclosed no esophageal irritation consistent with his reported frequency of vomiting; and his visual problems could be corrected with glasses.

The ALJ concluded that Martinez had a psychological impairment, but agreed with Dr. Williams' assessment that the problem was moderate rather than clinically severe. The ALJ

reasoned that Martinez's psychological problems were long-term, he had worked for much of this time, and there was no reason why he should now be unable to work. The ALJ determined that it would be difficult for Martinez to work in highly stressful situations and that his borderline intellectual abilities limited him to simple, unskilled work. Accepting that Martinez was unable to perform his past relevant work, the ALJ determined that Martinez was nevertheless not disabled within the meaning of the Social Security Act because he could work as an irrigation or farm worker, which are jobs available in substantial numbers in the national economy.

B.

The Commissioner may carry her burden at step 5 by relying on a vocational expert's response to hypothetical questions which incorporate all disabilities recognized by the ALJ. ***Morris v. Bowen***, 864 F.2d 333, 335-36 (5th Cir. 1988). Martinez contends that the ALJ's hypothetical questions to the vocational expert failed to rebut the step 5 presumption of disability because they did not incorporate all of his limitations. He argues that the hypothetical questions did not consider Martinez's limited ability to relate to co-workers, exercise judgment, accept supervision, and function independently; his total inability to deal with work-related stress; his poor social functioning, impaired ability to concentrate, and infrequent episodes of withdrawal due to "deterioration or decompensation in work or work-like settings".

> Unless the hypothetical question posed to the vocational
> expert by the ALJ can be said to incorporate reasonably
> all disabilities of the claimant recognized by the ALJ,
> and the claimant or his representative is afforded the

> opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the vocational expert any purported defects in the hypothetical questions (including additional disabilities not recognized by the ALJ's findings and disabilities recognized but omitted from the question), a determination of non-disability based on such a defective question cannot stand.

*Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994). Martinez was given the opportunity to correct deficiencies in the hypothetical questions but did not.

## 1.

The ALJ was not required to include in his hypothetical questions assumptions concerning Martinez's ability to relate to co-workers, exercise judgment, accept supervision, function independently, deal with work-related stress, and function socially. Although these factors may be caused by his problems, they are not in themselves separate disabilities. *See Bellow v. Chater*, No. 95-30035 (5th Cir. Aug. 16, 1995) at 4 n.3 (unpublished). Furthermore, Martinez's paralegal representative had an opportunity to point out any errors in the hypothetical. *Bowling*, 36 F.3d at 436.

## 2.

Drs. Fantasia and Dubin reported that Martinez's concentration skills were "essentially normal," but that his cognitive processing speed and psychomotor behavior were "significantly impaired". The ALJ found that Martinez could perform only simple, unskilled work; and he limited his hypothetical question to the vocational expert to this type of work. The ALJ also provided that the hypothetical individual described to the vocational expert was a person of

- 9 -

"borderline intelligence". No error is presented because the ALJ's hypotheticals presented record evidence to adequately support assumptions made by the vocational expert. *Bowling*, 36 F.3d at 436. The vocational expert was thus enabled to express a meaningful opinion concerning Martinez's employability.

### 3.

The ALJ rejected Martinez's descriptions of the severity of his panic attacks (consisting of nervousness, pain, and dizziness) and blackouts as exaggerated and, thus, incredible. The ALJ is in the best position to determine the persuasiveness of evidence, and we do not re-weigh it. *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994); *Chaparro v. Bowen*, 815 F.2d 1008, 1010-11 (5th Cir. 1987). The ALJ concurred with Dr. Williams's rejection of the psychologists' assessment (based on only one interview) of the severity of Martinez's disorder as not supported by the uncontroverted evidence of Martinez's reported activities. *See Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994) (medical evidence may be rejected as incredible if it is inconsistent with other evidence), *cert. denied*, 115 S. Ct. 1984 (1995); *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987). Obviously, the ALJ is not required to incorporate in his hypotheticals disabilities which he does not recognize. *See Bowling*, 36 F.3d at 436. Because the ALJ rejected Martinez's description of the severity of his episodes of withdrawal, he was not required to include this information in his hypothetical questions. *See id*.

### C.

Martinez claims that substantial evidence does not support the ALJ's rejection of his testimony concerning the severity and frequency of his panic attacks. The ALJ determined that Martinez suffered from panic attacks and vomiting, but that his "allegations [could not] be afforded a full degree of credibility". To support his credibility determination, the ALJ cited Dr. Williams's rejection of the psychologists' diagnosis as inconsistent with Martinez's level of activity, the fact that Martinez had never sought treatment for his mental disorder, inconsistencies in Martinez's descriptions of his problems, and the fact that Martinez's reports of frequent vomiting were inconsistent with the results of his medical examination.

It goes without saying that, in evaluating the credibility of Martinez's testimony, the ALJ was entitled to consider evidence of Martinez's daily activities, inconsistencies in his testimony, *Reyes v. Sullivan*, 915 F.2d 151, 155 (5th Cir. 1990), and whether he had sought treatment for his mental problems, *Selders*, 914 F.2d at 619. The ALJ's finding is supported by substantial evidence. *See* *Richardson*, 402 U.S. at 390.

D.

Martinez suggests that the ALJ improperly applied the regulations when he determined that Martinez had the mental residual functional capacity to work. He asserts that, in evaluating Martinez's mental impairment, the ALJ relied solely on Part "B" of the Psychiatric Review Technique Form to determine that Martinez could perform substantial gainful activity, and failed to

consider Part "A" of the form. *See* 20 C.F.R. § 404.1520a and pt. 404, subpt. P, app. 1, § 12.02 (1995).

To be classified as mentally impaired from an organic mental disorder under the regulations, an applicant must meet the criteria of both Parts "A" and "B" of § 12.02. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.02 (1995). Part "A" requires a finding of a demonstrated loss of specific cognitive abilities of affective changes and medical documentation of specified psychiatric symptoms. *Id.* Part "B" determines the severity of the disorder and states, *inter alia*, that the disorder must result in marked restriction of daily activities or social functioning. *Id.* Because the ALJ found that Martinez did not meet the criteria in Part B, the ALJ was correct in determining that organic mental disorders were absent since the criteria in both A and B were not met. *Id.*

### E.

Martinez urges that the record does not support the ALJ's determination that he has the mental capacity to perform unskilled work. As discussed above, the ALJ did not err by accepting Dr. Williams's assessment of Martinez's mental state over the opinion of the consulting psychologists. The ALJ's hypothetical question to the vocational expert included the mental limitations identified by Dr. Williams. The determination that Martinez can perform unskilled work is supported by substantial evidence. *See Richardson*, 402 U.S. at 390.

### VI.

For the foregoing reasons, the judgment is

**AFFIRMED.**